**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TYRONE WILSON,                   :
                                 :     Civil Action No. 06-4201 (NLH)
                Petitioner,      :
                                 :
        v.                       :     **OPINION**
                                 :
RONALD CATHEL, et al.,           :
                                 :
                Respondents.     :


**APPEARANCES:**

Petitioner pro se                Counsel for Respondents
Tyrone Wilson                    Robert L. Taylor
New Jersey State Prison          Cape May County Prosecutor
P.O. Box 861                     4 Moore Road
Trenton, NJ 08625-0861           DN-110, Central Mail Room
                                 Cape May Court House, NJ 08210


**HILLMAN**, District Judge

Petitioner Tyrone Wilson, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Ronald Cathel and the New Jersey Attorney General.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

On July 22, 1994, defendant attended a party, given by Leslie Ann Brown, at an apartment complex in Wildwood.  Among those present in Brown's apartment were his former girlfriend, Nikia Williams, and another of her former boyfriends, the victim, Roman Bernard. During the party, which began around 10 p.m., defendant briefly waived a silver handgun that he had brought with him.  There was evidence that he was carrying the gun because he was contemplating suicide.  Using a microphone supplied by the party's disc jockey, defendant said to Bernard, "I hope you don't think you're going home with her."  He was referring to Williams.  Defendant was laughing and everyone else was laughing because defendant seemed to be "playing."  He spoke on the microphone for about fifteen minutes, also saying, "Nikia's got a man and he's going home with her tonight.  He's going to take care of Nikia's baby." Although Williams thought at first that defendant was funny, after he repeated his remarks several times, she became angry and told him to stop.  He complied, apologizing over the microphone to both Williams and Bernard.  Williams left the party a little after midnight, as did Bernard a few minutes later. Defendant also left around the same time.

Carolyn Brown, Leslie's mother, watched, from the porch of a friend's apartment in another building in the complex, as people left the party.  On direct-examination, she said that she saw the defendant run up to within arm's length of Bernard, who was leaning against a wall of Building E, and she saw five flashes

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

and heard "bangs."  She saw Bernard kneel down, then rise and run away.  The defendant walked past her almost within "touching" distance; she thought she heard him say, "That's what he gets."  As defendant walked away, he met his cousin, Abduhl Spaulding, and handed him the gun.  They parted without speaking.

... [W]e note that on cross-examination, Carolyn Brown said that her attention was drawn to the area of the shooting by the sound of shots, although she continued to claim that she saw defendant run up to the victim.  She added that the defendant "like shoved him against the building and that's when I heard the gun shots."  She did not "recall" telling defense counsel's investigator that she "thought the two persons were ... struggling."  But she did not deny making that statement.  Nor did she deny telling the investigator that she did not hear the defendant say anything.  In fact, although she could not recall saying that, she said it was possible that she had made that admission.  Later in the trial, the investigator testified that she had indeed made the admissions in question.

Bernard's death was caused by three bullets that entered his chest and damaged his liver and aorta.  Before he died, he told the police that the defendant had shot him.  The defendant admitted the shooting to his uncle, Thomas Wilson, to an ex-girlfriend, and to his cousin Angelo Quinones, an inmate in the county jail, whom defendant met there following his arrest.  He did not indicate to any of them that he had shot in self-defense.

Dr. David Bogacki, an expert in clinical and forensic psychology, testified for the defense.  He described the defendant as having a borderline range IQ that was lower than 97% of the population.  He said the defendant was suffering from mixed substance abuse, was clinically depressed with <u>suicidal ideation</u>, and had a <u>paranoid personality disorder</u>.  He also said there was no evidence of any "underlying <u>brain disease</u> or <u>brain disorder</u>."  He relied on defendant's statement to him, never otherwise placed before the jury as substantive evidence, that "he thought he, Roman, was going to kill me and that he saw Roman reaching into his pocket and his perception was that Roman was reaching into his pocket to pull out a gun and to shoot him."  He concluded his direct-examination by answering "Yes" to

this question: "[i]s it your opinion then that on the night in question when my client shot Roman Bernard he truly felt that his life was in danger?"

On cross-examination, Dr. Bogacki agreed that in his report he had indicated that the combination of diagnoses, together with a degree of intoxication as related to him by defendant (but not supported by other witnesses), negated defendant's ability to knowingly or purposely kill the victim.  But he further explained that opinion by stating that, as also indicated in his report, the defendant knew that he was shooting the victim and he knew that shooting people in general was wrong, but his understanding was that he was shooting him because he thought the man was shooting him.  "You know, it was like more or less, you know, justifiable because he believed the man was pulling a gun and shooting him."

State v. Wilson, 335 N.J. Super. 359, 364-67 (N.J. Super. App.

Div. 1999) (emphasis in original).

Defendant conceded from the beginning of the trial that he had killed the victim, Roman Bernard, by shooting him three times at close range with a handgun.  The defenses raised were insanity, diminished capacity, and imperfect self-defense.  The jury was permitted to consider those defenses, even though defendant's expert witness conceded that defendant knew that he was shooting the victim and knew that shooting people was wrong.  The jury was also permitted to consider the lesser included offenses of aggravated manslaughter and reckless manslaughter.

State v. Wilson, 335 N.J. Super. at 363.

B.   Procedural History

Pursuant to a jury trial in the Superior Court of New

Jersey, Law Division, Cape May County, Petitioner was convicted

of purposeful or knowing murder, N.J.S.A. 2C:11-3a(1) and (2),

second-degree possession of a handgun for an unlawful purpose,

N.J.S.A. 2C:39-4a, third-degree unlawful possession of a handgun,

4

N.J.S.A. 2C:39-5b, and third-degree hindering apprehension, N.J.S.A. 2C:29-3b(1).  In a separate but related indictment, the Court also found Petitioner guilty of second-degree possession of a handgun by a convicted person, N.J.S.A. 2C:39-7b.  On June 12, 1996, the trial court sentenced Petitioner to an aggregate sentence of life plus fifteen years, thirty-seven and one-half years to be served without parole.

On direct appeal, the Superior Court of New Jersey, Appellate Division affirmed.  State v. Wilson, 335 N.J. Super. 359 (App. Div. 1999).  The Supreme Court of New Jersey granted certification and affirmed.  State v. Wilson, 165 N.J. 657 (2000).

The trial court denied Petitioner's petition for post-conviction relief.  The Appellate Division affirmed the denial of relief.  State v. Wilson, 2005 WL 2447851 (N.J. Super. App. Div. 2005).  The Supreme Court of New Jersey denied certification on January 26, 2006.  State v. Wilson, 186 N.J. 244 (2006).

This Petition followed.  Here, Petitioner asserts the following claims: (1) that Petitioner was deprived of a constitutional right to indictment by a properly-constituted grand jury, (2) that he was deprived of effective assistance of trial counsel because of counsel's failure (a) to move to dismiss the indictment, (b) to challenge the petit jury array, and (c) to procure appropriate expert witnesses, and (3) that he was

deprived of effective assistance of appellate counsel, because of appellate counsel's failure to challenge the indictment on appeal.[2]  Respondents concede that all claims have been exhausted.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] The Petition is not set forth on the usual form.  This Court gleaned these claims from the Petition and accompanying Motion for evidentiary hearing and advised Petitioner of its construction of the Petition in the Notice and Order [6] advising Petitioner of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner has never indicated any disagreement with this Court's construction of the Petition.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas

court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state

court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.   The Grand Jury Array

Petitioner contends that the grand jury which indicted him was not properly constituted.  Specifically, Petitioner contends that the Cape May County grand jury that indicted him was not constituted in compliance with the applicable New Jersey state statute.  (Motion for Evidentiary Hearing, Legal Argument, Point I, p.5.)  Petitioner contends that he is entitled to discovery and an evidentiary hearing on the claim regarding the composition of the grand jury, because his counsel "prevented" him from pursuing this issue in state court; specifically, Petitioner states that his counsel told him that any deficiency in the

9

county's grand jury pool had "nothing to do" with Petitioner's case.

Although Respondents concede that all of Petitioner's claims are exhausted, and they have answered with respect to the composition of the grand jury, this Court can locate no challenge to the composition of the grand jury in the record of this matter.[3]  Nevertheless, this claim may be denied as meritless.

Generally, deficiencies in state grand jury proceedings are not grounds for relief under § 2254.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  This conclusion flows from United States v. Mechanik, 475 U.S. 66 (1986), in which the Supreme

---

[3] Although Petitioner referred in his PCR Brief to cases involving the composition of grand juries, such as Casteneda v. Partida, 430 U.S. 482 (1977), it is clear that the challenge was to the composition of the petit jury.  For example, Petitioner stated, "Here, petitioner asserts that his Fourteenth Amendment equal-protection rights have been violated under the standards enunciated in Casteneda because the array used to select his jury failed to represent the racial composition of Cape May County." Petitioner then described the process "to successfully mount a petit jury selection challenge," and noted that, "[a]lthough the instant record fails to reveal how many blacks and Hispanics appeared on in the courthouse the day of jury selection, it is clear that none of them ended up in the large pool used to select the jury in this case."  Petitioner ultimately requested, not dismissal of the indictments, the appropriate remedy for a defect in a grand jury array, but remand for a new trial.  Thus, it is clear that the challenge was only to the composition of the array from which the petit jury was selected.  Although the State responded as if the challenge were to both the grand and petit juries, argument at the hearing on the PCR motion went only to the issue of the adequacy of the petit jury pool, as did the decision of the PCR court.  Again, in Petitioner's appeal Brief, the only claim raised related to the adequacy of the petit jury pool.  The Appellate Division affirmed for the reasons stated in the trial court's opinion.

Court held that a violation of Fed.R.Crim.P. 6(d) (which governs who may be present while the grand jury is in session, deliberating, or voting), discovered only at trial, did not justify relief after the petit jury had rendered its verdict.

The exception to this rule is a claim of purposeful racial discrimination in the selection of grand jurors.  Such purposeful racial discrimination is considered a "structural" error which can be remedied only by vacating the judgment of conviction and requiring re-indictment by a properly-constituted grand jury.  See Vasquez v. Hillery, 474 U.S. 254 (1986); U.S. v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993).

> Thus, in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs.  The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied.  Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time.  This method of proof, sometimes called the 'rule of exclusion,' has been held to be available as a method of proving discrimination in jury selection against a delineated class.  Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.  Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

<u>Castaneda v. Partida</u>, 430 U.S. 482, 494-495 (1977) (citations and footnote omitted).

Respondents concede that Petitioner has identified two constitutionally cognizable minority groups: African-Americans and Hispanic-Americans.  However, more than ten years after his conviction, Petitioner has not provided to any court any statistical evidence as to the historical racial and ethnic compositions of Cape May County populations or grand juries over a significant period of time, or as to the existence of a grand jury selection procedure that is susceptible of abuse or is not racially neutral.

Here, although Petitioner states that his counsel "prevented" him from pursuing this claim in state court, and he therefore seeks an evidentiary hearing here, he has presented no explanation as to the manner in which his counsel "prevented" him from pursuing this claim.  It appears only that his counsel declined to pursue this argument on Petitioner's behalf. Petitioner does not state that he made any independent effort to pursue this claim and the record reflects that he failed to raise this issue in the separate Supplemental Letter Brief he filed in support of his petition for post-conviction relief.

Petitioner has been through a full course of direct appeals and collateral attacks on his conviction in state court without raising this issue, and he does not allege any facts suggesting a

basis for raising it at this late date.  Thus, it appears that this claim would be procedurally barred in the state courts of New Jersey.  See, e.g., N.J.Ct.R. 3:22-12. Limitations ("No other petition shall be filed pursuant to this rule more than 5 years after rendition of the judgment or sentence sought to be attacked unless it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect."); N.J.Ct.R. 3:22-4. Bar of Grounds Not Raised in Prior Proceedings; Exceptions ("Any ground for relief not raised in prior proceeding under this rule, or in the proceedings resulting in the conviction, ... or in any direct appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice, or (c) that the denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.").

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)].  Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."  Coleman v.

> Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (emphasis added).

Here, Petitioner has not alleged any facts suggesting "cause" to excuse his procedural default nor actual "prejudice" resulting from the alleged violation in the grand jury array. Nor has he demonstrated that failure to consider the claim will result in a fundamental "miscarriage of justice."  Thus, he is not entitled to pursue this claim in federal court.

Moreover, even if Petitioner had not procedurally defaulted this claim in state court, he would not be entitled to a federal evidentiary hearing to develop its factual basis.  Under § 2254(e), if the applicant has failed to develop the factual basis of a claim in State court proceedings, a federal court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

> (A) the claim relies on --
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

As Petitioner does not allege any effort he made to pursue this claim in state court, this Court must find that Petitioner "failed" to develop this claim within the meaning of § 2254(e). The claim does not otherwise meet the requirements of § 2254(e)(2)(A) or (B) for an evidentiary hearing.  Accordingly, Petitioner's request for an evidentiary hearing will be denied and Petitioner is not entitled to a hearing on the merits of this claim challenging the grand jury array.  See, e.g., Hawkins v. Mullin, 291 F.3d 658, 669-70 (10th Cir. 2002), cert. denied, 537 U.S. 1173 (2003).

In any event, Petitioner's attack on the grand jury array is meritless.  The claim appears to be based on the failure of Cape May County to adhere to N.J.S.A. 2B:20-2 "Preparation of Jury List," which took effect January 1, 1995, and which required the source list for juries to be expanded to include, in addition to voter registration and driver's license lists, lists of "filers of State gross income tax returns and filers of Homestead Rebate application forms."  Nowhere in the record, even with respect to the challenge to the petit jury array, is there any evidence of any intentional discrimination in the registration of voters or in the issuance of driver's licenses.  "[A]bsent positive evidence that some groups have been hindered in attempting to register to vote, a jury venire drawn from voter registration lists violates neither the Sixth Amendment's fair cross-section

requirement nor the Fifth Amendment's guarantee of Equal Protection." Schanbarger v. Macy, 77 F.3d 1424, 1424 (2d Cir. 1996); see also United States v. Ashley, 54 F.3d 311, 314 (7th Cir.) (upholding the use of voter registration lists as the source of names for jury venires), cert. denied, 516 U.S. 888 (1995); United States v. Lewis, 10 F.3d 1086, 1090 (4th Cir. 1993) (same). Any violation of state law in the creation of the grand jury array is not a ground for federal habeas relief, see 28 U.S.C. § 2254(a), nor does it establish an equal protection violation. For all of the foregoing reasons, Petitioner is not entitled to relief on this claim.

B.   Ineffective Assistance of Trial Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694

16

(1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  Strickland at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of

<u>Strickland</u>.   <u>See</u> <u>Berryman v. Morton</u>, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

    1.   <u>Equal Protection Claim: Grand and Petit Jury Pools</u>

    Petitioner alleges his trial counsel was ineffective for
failing to make an equal protection challenge based upon the
compositions of the grand and petit jury arrays.

    After stating that, "[t]o prevail on a claim of ineffective
assistance of counsel, a defendant must demonstrate that his
attorney's performance was deficient and that there exists a
reasonable probability that, but for counsel's unprofessional
errors, the verdict would have been different," the PCR court
rejected the claim of ineffective assistance with respect to the
petit jury composition.

    II.   <u>Challenge to the Jury Pool</u>

> There is simply a lack of specifics as to how
> defense counsel's failure to pursue the issue of the
> allegedly racially discriminatory manner in which
> jurors were selected constitutes ineffective assistance
> of counsel.  No details are proffered as to any alleged
> racially discriminatory policies, or as to how defense
> counsel's failure to follow through on the application
> had an impact on the outcome.  A motion in this case
> was made to the Assignment Judge on this very subject,
> which motion was denied.  No appeal was ever taken.

(Letter Opinion at 2, 4, Jan. 9, 2004 (citation omitted).)

    Again, after identifying the <u>Strickland</u> standard as the
applicable test, the Appellate Division also rejected
Petitioner's claim with respect to the petit jury.

His belated claim that his attorney should have moved
to challenge the jury pool is belied by the trial
record which shows that he elected to go forward with
the jury pool and deemed the final jury acceptable.

...

Our independent review of the record satisfies
that defendant did not satisfy the
Strickland/Cronic/Fritz test.  We therefore affirm
substantially for the reasons set forth by Judge
Alvarez in her letter opinion of January 9, 2004.

State v. Wilson, 2005 WL 2447851 , *2-3 (N.J. Super. App. Div.

2005).

The state courts correctly identified the applicable

standard and the state court decision was not contrary to, nor an

unreasonable application of, clearly established federal law, nor

was it based upon an unreasonable determination of the facts in

light of the evidence presented.  The trial record reflects that

Petitioner made the decision, after consultation with his counsel

and contrary to his counsel's recommendation, to proceed to trial

and to abandon the challenge to the petit jury.  (Transcript of

April 10, 1996, at 4-7.)

In addition, this Court has already determined that

Petitioner has failed to present any evidence of intentional

discrimination in the composition of the grand jury and that any

failure to comply with state law regarding the lists from which

grand jurors are to be drawn is not a ground for federal habeas

relief.

In any event, Petitioner has failed to establish "prejudice" from any failure to challenge the composition of the petit or grand jury; that is, even if his counsel's performance fell below an objective standard of reasonable professional assistance, Petitioner has not established that there is a reasonable probability that, but for counsel's errors, the outcome would have been different.  As the PCR court stated, the evidence of Petitioner's guilt was "overwhelming."  Accordingly, Petitioner has failed to establish any ineffective assistance of trial counsel with respect to the composition of either the grand or petit jury.  Petitioner is not entitled to relief on this claim.

    2.  <u>Use of Expert Witnesses</u>

Petitioner contends that his trial counsel's strategy with regard to the use of expert testimony fell below the Sixth Amendment standard for effective assistance of counsel.

In support of his claim, in his petition for post-conviction relief, that his trial counsel failed to provide effective assistance with respect to expert witnesses, Petitioner submitted statements from his trial counsel and Dr. Kenneth Weiss, M.D., D.F.A.P.A., whom counsel had consulted but did not use at trial.

Petitioner's trial counsel stated, in his certification:

    5.  In his report, Dr. Weiss, indicated that, "... aside from Mr. Wilson's prior drug offense, there is nothing to suggest that he is an aggressive person, that he is prone to violence, or that he has the characteristic of anti-social behavior."  This statement was not correct as Mr. Wilson had both

arrests and convictions for violent offenses as both a
juvenile and adult.  Unfortunately in my review of this
report I failed to notice this error and forwarded the
report to Assistant Prosecutor James M. Herlihy as it
was my intent to call Dr. Weiss as a witness for the
defense at trial.  To the best of my knowledge I
forwarded Mr. Wilson's criminal history to Dr. Weiss.

6.  Prior to my calling Dr. Weiss as a witness,
the state indicated that it wanted to be able to cross
examine the doctor about petitioner's prior contacts
with the law and whether or not this would have
impacted the doctor's position, i.e. would his position
remain the same now that Dr. Weiss would be made aware
of Mr. Wilson's prior offenses involving violent
behavior.  It was not until this time that I realized
my failure to notice the error as detailed in the above
paragraph.  In opposition to the State's application, I
argued to the court that irrespective of Weiss' use (or
not) of these convictions, that the state should not be
permitted to use them in questioning since doing so was
only "getting in the back door what it could not get in
the front door", namely both juvenile adjudications and
the adult prior without testimony from the client.  In
denying my objection, the court ruled that the state
could cross examine Weiss regarding these convictions
to test the witnesses credibility.  Consequently and
with little or no input from Dr. Weiss, I decided not
to call Dr. Weiss as a witness.

7.  Although this decision was made for strategic
reasons, it was done without a full factual or legal
investigation or discussion with the expert on whether
or not his testimony would have been affected by the
mention of these convictions.  In fact, I never
discussed the fact that he could have alluded to them
in such a way as to avoid the jury having full details
of the convictions or the fact that their existence
would not have altered his opinion.  Therefore, I can
honestly state that this decision on my part was made
at a moment's notice, rather than in any considered
fashion and with the proper discussions and
investigation necessary to make an appropriate
strategic decision.

(Certification of Michael Catanese, Esq.)  Dr. Weiss stated, in

his letter:

21

Having reviewed the materials, I express the following opinion within reasonable medical certainty: The revelation of Mr. Wilson's record <u>would not</u> have affected my opinion that he was "insane" at the time of the offense.  However, on page 5 of my report, we find the following sentence: "third, aside from Mr. Wilson's prior drug offense, there is nothing to suggest that he is an aggressive person, that he is prone to violence, or that he has the characteristic of antisocial behavior."  To some degree, this statement is contradicted by the juvenile and criminal record. However, it is too small a point for me to have considered it material to my overall opinion on criminal responsibility.  Thus, had I testified, I might have conceded this correction, but would have been able to support my opinion on its other bases.

(Letter from Kenneth J. Weiss, M.D., D.F.A.P.A., to Public Defender Anne T. Picker, Esq., dated June 2, 2003.)

After stating the correct standard for evaluation of an ineffective-assistance claim, the PCR court rejected the claim based upon the use of expert evidence.

The State's proofs in this case were overwhelming, not just beyond a reasonable doubt.  Wilson was witnessed shooting the victim repeatedly at close range.  He had earlier attempted to provoke the victim at a party, as the victim was friendly with his former girlfriend.  Shortly after the shooting, Wilson passed off a handgun to a long-time male friend for the friend to hide.  He left a tape recorded message at a female friend's house that since he could not shoot himself or her, he shot "him."  He told an uncle after the incident that he had an argument with a man over a woman and that the man was shot.  Wilson also told a second male friend that he shot the victim five times. The morning after the crime, he admitted shooting the victim to a second female friend.  In summary, in addition to being witnessed shooting the victim, shortly after trying to unsuccessfully provoke him into a fight, he admitted the crime to five different persons whose testimony was presented at trial.

22

1.   <u>Diminished Capacity</u>

In order to substantiate Wilson's diminished capacity defense, evaluations were obtained from a psychiatrist, Kenneth Weiss, M.D., <u>and</u> a psychologist, David Bogacki, Ph.D.  Wilson now contends the decision made by his attorney not to present Dr. Weiss's testimony made counsel's representation at trial ineffective.  Dr. Bogacki did testify at trial that Wilson attended school only to the 9th grade, had an IQ range between 70-79, began to drink at age 10, and began to abuse drugs at age 14.  In addition, Dr. Bogacki opined that Wilson suffered from major depression.  Dr. Bogacki testified that defendant's mental state at the time of the murder negated any purposeful, knowing intent to kill the victim.

Another witness, Rachel Bonilla, testified that when Wilson called and left a message on her voice mail, approximately one hour after the murder, his speech was slow and slurred.  Bonilla acknowledged, however, that when she met Wilson the following morning, he described the murder in detail.  This conflicted with her testimony that when Wilson drank to intoxication, he could not remember specifics of what he had done, where he had been, etc.  Clearly, defense counsel did present as substantial evidence as was available to the jury on the question of diminished capacity.

Several days into the trial, the defense sought <u>in limine</u> to bar the state from cross-examining Dr. Weiss as to Wilson's complete criminal history.  In formulating his opinion that nothing suggested that Wilson was "an aggressive person, ... prone to violence", or that he displayed characteristics of an anti-social personality, Dr. Weiss reviewed his juvenile history in addition to other information. That history included two adjudications for assault. Apparently, he was unaware of Wilson's adult prior for a 4th degree assault.  Defendant's counsel represented that when told of the 4th degree conviction, Dr. Weiss stated it would not change his opinion.  Because the state would be permitted to cross Dr. Weiss on Wilson's prior criminal history as to assaults and the impact it had, if any, on his opinion, defense counsel decided not to have him testify.

Wilson's assertion that his attorney's decision to not call Dr. Weiss to testify amounts to ineffective assistance of counsel does not meet the burden established by the United States Supreme Court.  In Strickland v. Washington, 466 U.S. 668, 689 (1984), the Court stated:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'  (emphasis added) (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Wilson's argument falls far short of meeting the standard as set forth in Strickland.  Even in hindsight, counsel's decision to not call Dr. Weiss appears to be sound trial strategy.  Professional testimony was presented to the jury about defendant's lack of the requisite mental state.  Factual, albeit weak, testimony was proffered through Bonilla.  It was prudent to avoid Weiss's position that despite two adjudications and one conviction for assault, that Wilson, who was 21 when the murder occurred, was not an aggressive person.

The transcript reveals that defense counsel did discuss the issue of the extent of Dr. Weiss' familiarity with Wilson's record, and his reliance upon

24

it in formulating his opinion, with Dr. Weiss.  It was
a reasonable, strategic decision for counsel to have
made not to call Dr. Weiss as a witness.  His
credibility would certainly have been brought into
question during a cross-examination which would develop
facts inconsistent with his opinion.  In other words,
Dr. Weiss' testimony may have ultimately done the
defense more harm than good.

This tactical decision is not an example of
deficient performance.  In light of the inherent
inconsistency between the doctor's opinion and Wilson's
record, the likelihood is that the verdict would have
been the same, even if the jury had heard Weiss'
opinion.  It is nothing more than unwarranted
speculation to conclude the jury would have found
diminished capacity if they had heard Dr. Weiss'
testimony.  It does not justify a finding of
ineffective assistance of counsel.

(Letter Opinion at 2-4, Jan. 9, 2004.)

Again, applying the Strickland standard, the Appellate

Division rejected Petitioner's claim.  "Counsel's decision not to

call Dr. Weiss as a witness was an appropriate exercise of trial

strategy since he could be confronted with defendant's criminal

record for violent crimes in front of the jury. ...  Our

independent review of the record satisfies us that defendant did

not satisfy the Strickland/Cronic/Fritz test.  We therefore

affirm substantially for the reasons set forth by Judge Alvarez

in her letter opinion of January 9, 2004."  State v. Wilson, 2005

WL 2447851 at *2-*3 (N.J. Super. App. Div. 2005).

The state court decision is neither contrary to nor

unreasonable application of clearly established federal law, nor

is it based on an unreasonable determination of the facts in

light of the evidence presented.  This Court agrees with the
trial court's determination that the proof in this matter was
"overwhelming."  Thus, even if Petitioner could establish that
his trial counsel's performance fell below an objective standard
of reasonable professional assistance, he cannot establish that
there is a reasonable probability that, but for counsel's
unprofessional errors with respect to Dr. Weiss, the outcome
would have been different.  Petitioner is not entitled to relief
on this claim.

C.   Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel failed to
provide effective assistance because he failed to pursue
Petitioner's claims regarding the allegedly illegal indictment
and regarding trial counsel's use of expert witnesses.

The Supreme Court has held that the Due Process Clause of
the Fourteenth Amendment guarantees a defendant the effective
assistance of counsel on a first direct appeal as of right.
Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard
for effective assistance of counsel applies to appellate counsel.
See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).
Appellate counsel does not have a duty to advance every
nonfrivolous argument that could be made, see Jones v. Barnes,
463 U.S. 745, 754 (1983), but a petitioner may establish that
appellate counsel was constitutionally ineffective "if he shows

that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

Applying the <u>Strickland</u> standard, the PCR court rejected Petitioner's claim of ineffective assistance of trial counsel.

> In this post conviction relief application, Wilson argues that the failure by appellate counsel to raise the above and other issues render that counsel ineffective.  Unfortunately, Wilson offers no specifics regarding how raising the issues for consideration at the Appellate Division would have had a different outcome.

(Letter Opinion at 4, January 9, 2004.)  The Appellate Division affirmed the PCR court without discussion.

As Petitioner has failed to establish any merit to the underlying claims, he cannot establish that his appellate counsel was ineffective for failing to raise these claims.  The decision of the state court is neither contrary to nor an unreasonable application of applicable federal law nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

27

right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability shall issue.

V.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

At Camden, New Jersey                  s/Noel L. Hillman
                                       Noel L. Hillman
                                       United States District Judge

Dated: May 14, 2008